IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| DOUGLAS NEIMAN,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security Administration,<br><br>    Defendant. | Case No. 2:10-cv-607-SA<br><br><br><br>**MEMORANDUM DECISION AND ORDER** |

Before the court is an action filed by Plaintiff, Douglas Neiman, asking the court to reverse the final agency decision denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act. *See* 42 U.S.C. §§ 401-434. The Administrative Law Judge ("ALJ") found that Plaintiff was capable of performing his past relevant work as a real estate agent, sales person, or parts clerk, and therefore was not disabled. Plaintiff challenges the ALJ's decision, arguing that it is not supported by substantial evidence and that it is based on reversible legal errors.

Having carefully reviewed and considered the ALJ's decision, the record, and the parties' pleadings, the court concludes that this case must be reversed and remanded.

## BACKGROUND

Plaintiff protectively filed an application for Title II benefits on November 30, 2005, alleging disability from May 1, 2005. (Doc. 9, the certified copy of the transcript of the entire record of the administrative proceedings relating to Douglas Nieman (hereafter "Tr. __") 49.) His claim was denied initially on June 26, 2006. (Tr. 29.) Plaintiff filed a timely request for reconsideration on August 1, 2006 (Tr. 32), which was denied on October 5, 2006 (Tr. 33). Pursuant to Plaintiff's request, a hearing was held before an ALJ on January 16, 2008. (Tr. 620-69.) The ALJ's unfavorable decision was issued on February 28, 2008. (Tr. 12-21.)

On April 29, 2008, Plaintiff timely filed a request for review of the ALJ's decision. (Tr. 576.) Included in that request for review was new medical evidence from Thomas Aikens, Ph.D. (Tr. 598-611.) The Appeals Council denied review in a May 7, 2010 order. (Tr. 4-7.)

After receiving the Appeals Council's denial of Plaintiff's request for review, Plaintiff filed a complaint with this court on July 2, 2010, and the case was assigned to United States District Judge Dee Benson. (Doc. 2.) Plaintiff filed his brief on December 7, 2010 (Doc. 13), and the Commissioner filed his answer brief on January 6, 2011 (Doc. 15). Plaintiff then filed a reply brief on February 4, 2011. (Doc. 17.) Based on the parties' consent to magistrate judge jurisdiction, Judge Benson

referred this case to United States Magistrate Judge Samuel Alba on January 25, 2011, pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 16.)

## **STANDARD OF REVIEW**

The court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and citations omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (citation omitted), and "requires more than a scintilla but less than a preponderance," *Lax*, 489 F.3d at 1084. The Commissioner's findings, "if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor substitute its judgment for that of the [ALJ]." *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006 (quotations and citation omitted)). "[The court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax*, 489 F.3d at 1084. "The [ALJ's] failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed

[are] grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotations and citation omitted).

A five-step evaluation process has been established for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step process). If a determination can be made at any one of the steps that a claimant is or is not disabled, the subsequent steps need not be analyzed. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

> Step one determines whether the claimant is presently engaged in substantial gainful activity. If [the claimant] is, disability benefits are denied. If [the claimant] is not, the decision maker must proceed to step two: determining whether the claimant has a medically severe impairment or combination of impairments. . . . If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. If, on the other hand, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three.

*Williams*, 844 F.2d at 750-51 (quotations and citations omitted); *see* 20 C.F.R. §§ 404.1520(a)(4)(i)-(ii), 416.920(a)(4)(i)-(ii).

"Step three determines whether the impairment is equivalent to one of a number of listed impairments that . . . are so severe as to preclude substantial gainful activity . . . . If the impairment is listed and thus conclusively presumed to be

4

disabling, the claimant is entitled to benefits. If not, the evaluation proceeds to the fourth step . . . ." *Williams*, 844 F.2d at 751 (quotations and citations omitted); *see* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). At the fourth step, the claimant must show that the impairment prevents performance of his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). "If the claimant is able to perform his previous work, he is not disabled." *Williams*, 844 F.2d at 751. If, however, the claimant is not able to perform his previous work, he "has met his burden of proof, establishing a prima facie case of disability." *Id.*

At this point, "[t]he evaluation process . . . proceeds to the fifth and final step." *Id.* At this step, the burden of proof shifts to the Commissioner, and the decision maker must determine "whether the claimant has the residual functional capacity [("RFC")] . . . to perform other work in the national economy in view of his age, education, and work experience." *Id.; see* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If it is determined that the claimant "can make an adjustment to other work," 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), he is not disabled. If, on the other hand, it is determined that the claimant "cannot make an adjustment to other work," 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), he is disabled and entitled to benefits.

5

**ANALYSIS**

Plaintiff alleges that he became disabled on May 1, 2005. (Doc. 13, at 1.) Plaintiff's last date insured was December 31, 2005, (Tr. 15), making the relevant time period in this case May 1, 2005, to December 31, 2005. *See* 20 C.F.R. § 404.130.

Plaintiff challenges the ALJ's decision by making the following arguments: (1) the ALJ performed an inadequate listings analysis; (2) the ALJ did not give proper weight to Plaintiff's treating sources' medical opinions; (3) the ALJ's RFC analysis was not supported by substantial evidence, resulting in the ALJ improperly determining Plaintiff was capable of performing his past relevant work; and (4) the ALJ improperly declined to apply the Medical-Vocational Guidelines.

Having carefully reviewed and considered the ALJ's decision, the record, and the parties' pleadings,[1] the court concludes that the ALJ's decision must be reversed and remanded.

**A. Listing Finding**

First, Plaintiff challenges the ALJ's failure to find that his psychiatric impairments meet or equal Listings 12.04 for depression and 12.06 for Post Traumatic Stress Disorder ("PTSD").

At step three of the disability review process, the ALJ is required to follow the procedure for evaluating mental impairments set forth in the Social Security Administration's

---

[1]The court has concluded that oral argument is not necessary and will decide this case based on the record before it.

regulations.  *See* 20 C.F.R. § 404.1520.  This procedure requires the ALJ to evaluate whether Plaintiff's impairments meet or equal the criteria of Part A of 12.04 or 12.06, and then evaluate the degree of functional loss resulting from the impairment using the Part B criteria.  *See* 20 C.F.R. § 404.1520a(b).  If both the A and B criteria are met for either listing, then Plaintiff is disabled.

In his decision, the ALJ specifically said that "[Plaintiff]'s mental impairment does not meet or medically equal the criteria of listing 12.04."  (Tr. 18.)  The ALJ stated that in making that finding, he had "considered whether the 'paragraph B' criteria are satisfied," and then the ALJ set forth the paragraph B criteria.  The ALJ did not discuss Plaintiff's relevant medical records in terms of the paragraph B criteria; instead, the ALJ simply referred to his RFC assessment because that assessment

> requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p).  Accordingly, the undersigned has translated the above "B" and "C" criteria findings into work-related functions in the residual functional capacity assessment below.

(Tr. 18.)  As a result, in order to evaluate the ALJ's listing analysis and finding, the court next examines whether the ALJ's

7

RFC analysis sufficiently discusses and supports the ALJ's listing finding.

Before the court examines the ALJ's RFC analysis, the court first notes that the ALJ did not evaluate whether Plaintiff's impairments met the requirements of Listing 12.06 for PTSD, even though Plaintiff was diagnosed with PTSD, even though Plaintiff's representative mentioned Listing 12.06 in his argument to the ALJ, and even though the ALJ himself found that one of Plaintiff's severe impairments was PTSD.  The ALJ's only reference to Listing 12.06 was in this summary of Plaintiff's representative's argument:

> Claimant's representative argues that the claimant is disabled due to post traumatic stress disorder, depression, dysfunction of his right shoulder and of his right knee, and that based on the report from Thomas Aikens, Ph.D., he was disabled prior to December 31, 2005, the date he was last insured for title II benefits.  The representative also argues that the treatment notes from Catharine Balka, APRN indicate that prior to the date last insured, the claimant had a global assessment of functioning of fifty or less which means he had serious limitations of function.  Based on these reports, he argues that claimant meets or his condition is as medically severe as contemplated by the criteria of listing 12.06 (anxiety-related disorders).  In the alternative, he argues that the fifty-six years of age as of the alleged date of onset of disability and pursuant to Medical-Vocational Guideline 202.06, he is disabled.

(Tr. 19.)  Thus, in the above-quoted paragraph, the ALJ did not engage in any analysis regarding whether Plaintiff met the

8

requirements of Listing 12.06; instead, the ALJ simply mentioned Plaintiff's argument that Plaintiff's impairments meet the requirements of Listing 12.06.

Turning to an examination of the ALJ's RFC finding, the ALJ said, as part of that finding:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). . . . He is mildly limited in his capacity to sustain concentration and attention for extended periods, to exercise sound judgment, to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, to sustain an ordinary routine without special supervision, to interact appropriately with the general public, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. He is moderately limited in his capacity to deal with normal stress in the competitive work setting.

(Tr. 19.) Without citation to the record, the ALJ stated that in making that RFC assessment, he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p" (Tr. 19); however, the ALJ did not discuss any of Plaintiff's specific symptoms. The ALJ also stated that he had "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-5p and 06-3p" (Tr.

9

19); however, the ALJ did not discuss or evaluate any specific opinion evidence.

The ALJ found that "[Plaintiff]'s medically determinable impairments could reasonably be expected to produce the alleged symptoms." (Tr. 19.) Nevertheless, the ALJ found that "[Plaintiff]'s statements concerning the intensity, persistence and limiting effects of th[e alleged] symptoms are not credible to the extent they are inconsistent with the [RFC] assessment." (Tr. 19.)

The ALJ supported his credibility finding with the following evidence. First, at his May 17, 2004 checkup, Plaintiff specifically denied having symptoms of PTSD and depression. (Tr. 20.) Two months later, Plaintiff reported needing help with depression and having combat-related PTSD, resulting from being shot at while fighting in the Vietnam War in a submarine. (Tr. 20.) It was at that time that he was referred to Catherine Balka, APRN, a mental health clinical specialist, who conducted an initial screening interview of Plaintiff regarding mental health issues on June 24, 2004. (Tr. 20.)

Regarding Plaintiff's initial screening interview with Ms. Balka, the ALJ stated:

> Claimant was living in Littlefield, Arizona and working as a real estate agent in St. George, Utah. He reported that his mood had been "unstable" over the past three years and had been an issue for thirty years. He said his wife divorced him two years ago, and he moved to Arizona. He said he had an unstable

10

>     work history without the ability to stick
>     with any one job. He denied that he was
>     depressed, but said he had a low mood and got
>     angry easily.

(Tr. 20.)

Following this discussion of these two 2004 medical appointments, the ALJ discussed Plaintiff's shoulder and knee issues. (Tr. 20.) The ALJ then stated:

> Claimant remains physically active. On May
> 22, 2006 he indicated he was going to be the
> pickup person for some friends who were going
> on a hang gliding tour in central Utah, the
> trip taking about a week (Exhibit 3F, page
> 12). He also was riding his motorcycle every
> day which was pleasurable for him and
> indicates he was still interested in
> following hobbies and they brought him
> happiness.
>
> In sum, the above residual functional
> capacity assessment is supported by the
> claimant's activities of daily living which
> include the building of his own house, the
> building of a shed, motorcycle riding, and
> traveling for a week with a group of friends.
>
> The Administrative Law Judge has given due
> consideration to the award of one hundred
> percent, service related disability to the
> claimant by the Veteran's Administration
> (Exhibit 5E), however, the record before the
> Administrative Law Judge does not contain
> sufficient evidence to find that for Social
> Security purposes the claimant cannot perform
> some forms of substantial gainful activity.

(Tr. 20-21.) Following this brief discussion, the ALJ found at step six that Plaintiff was capable of performing previous jobs. At step seven, the ALJ found that Plaintiff was not disabled. At

11

each of those two steps, there the ALJ did not discuss specific medical evidence in the record.

Having carefully read the ALJ's decision and having carefully considered the parties' arguments, the court concludes the ALJ's decision is inadequate to support his listing finding. Although the ALJ may refer to other parts of his decision to explain the basis for his listing finding, those other referred-to parts of the decision must adequately explain how the ALJ reached his listing finding. In this case, other than his conclusory statement that Plaintiff did not meet Listing 12.04, the ALJ's listing analysis consists entirely of boilerplate language; it does not contain any analysis explaining how specific medical evidence in the record supports his listing finding.

The ALJ's RFC analysis (to which he refers in and upon which depends his listing analysis), also does not contain an adequate analysis of Plaintiff's relevant medical records. As quoted above, although in that RFC discussion the ALJ set forth Plaintiff's argument that Aikens' report and Balka's treatment notes support a finding that Plaintiff met Listing 12.06, the ALJ engaged in no analysis of that argument, and did not even express a finding regarding that argument. Further, the ALJ relied on the VA Hospital notes from May and July 2004, presumably to show an inconsistency in Plaintiff's responses as to whether he had symptoms of PTSD and depression (Tr. 20); however, Plaintiff is

12

claiming disability beginning many months later - May 1 to December 31, 2005 - and the ALJ did not discuss almost any of the relevant medical records in any kind of detail for that period at issue.  In fact, other than reciting information regarding Dr. Aikens' March 18, 2005 PTSD and depression evaluation at step two of his decision (quoted below) and Ms. Balka's initial screening interview (discussed below) (which again occurred several months before the relevant time period), those two 2004 medical records are the only specific medical records relating to Plaintiff's affective disorders that the ALJ discussed in his entire decision.

The ALJ noted that Plaintiff was referred to Catherine Balka, a mental health clinical specialist, and that she conducted an initial screening interview regarding Plaintiff's mental health issues on June 24, 2004.  The ALJ set forth some of the information Plaintiff reported about himself to Ms. Balka; however, again, the ALJ provided no insight into how that medical report led to his listing (or RFC) finding.  (Tr. 20.)

In step two of his decision, the ALJ mentioned some of the medical findings of Dr. Aikins, Plaintiff's treating psychologist.  The ALJ's discussion of specific medical records involving Aikens is quoted in full below:

> On March 18, 2005, Thomas R. Aikins, Ph.D., a
> staff psychologist at the Veteran's
> Administration Hospital conducted an
> evaluation to determine whether claimant had
> post traumatic stress disorder and

13

> depression. Dr. Aikins identified 19
> symptoms consistent with post traumatic
> stress disorder and depression. He estimated
> claimant's global assessment of functioning
> was 45 which means serious symptoms (Exhibits
> 3F, pages 78-80; 5F, page 36).

(Tr. 17.) In this instance, the ALJ noted a medical record closer to the time period at issue in this case, but again, although the ALJ acknowledged an important medical record, he did not engage in any kind of analysis involving that specific record.

Furthermore, the ALJ did not even mention, much less discuss, Dr. Aikens' progress notes in the record, although Plaintiff was treated by Dr. Aikens for some length of time, including the relevant time period. (*See, e.g.,* Tr. 239-40 (March 18, 2005), 234 (April 11, 2005), 215 & 217 (September and November 2005), and 214 (December 2005).) Further, the ALJ also does not even mention, much less discuss, the progress notes of Catherine Balka, APRN. Like Dr. Aikens, Ms. Balka treated Plaintiff for quite some time, including throughout the relevant time period. (*See, e.g.,* Tr. 119-23 (June 24, 2004), 108-09 (November 29, 2004), 232-33 (April 12, 2005), 228-29 (May 20, 2005), and 210-112 (December 28, 2005).) Both Dr. Aikens' and Ms. Balka's progress notes support that Plaintiff was being treated for PTSD and depression during the relevant time period. In addition, the ALJ did not discuss any other relevant medical evidence or opinion regarding Plaintiff's PTSD and depression.

14

In reviewing the ALJ's decision, the court is confined to the reasoning of that decision. In other words, the court is required to review the ALJ's decision without substituting reasons why the ALJ reached his or her findings. *See Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005) ("[T]he district court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself.").

In addition, the ALJ's listing finding must be supported by substantial evidence, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "In the absence of ALJ findings supported by specific weighing of the evidence, [the court] cannot assess whether relevant evidence adequately supports the ALJ's conclusion that appellant's impairments did not meet or equal any Listed Impairment, and whether he applied the correct legal standards to arrive at that conclusion." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Although an ALJ is not required to discuss every piece of evidence, the record must demonstrate that the ALJ considered all the evidence, including the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects. *Id.* at 1009-10.

Having carefully reviewed the ALJ's decision, the court concludes that the ALJ's listing finding is not supported by

15

substantial evidence.  The finding lacks explanatory reasoning, including any weighing and analysis of the medical evidence.  The ALJ provided no link in his decision between the medical records he mentioned and the mental RFC assessment ("MRFC"), upon which he based his listing finding.  Consequently, the court can only speculate regarding the ALJ's evaluation and treatment of the medical evidence in the record and how he arrived at his MRFC.

In reaching this decision, the court has considered the arguments made by the Commissioner in his pleadings.  Those arguments lack merit.  For example, contrary to the Commissioner's argument, Plaintiff's challenge of the ALJ's decision does not "res[t] almost solely on the fact that he has received a one-hundred percent disability rating from the VA."  (Doc. 15, at 7.)  Rather, Plaintiff cites medical evidence in the record.  For example, Plaintiff argues that Dr. Aikens indicates the Plaintiff's psychiatric impairments meet both the A and B criteria for Listings 12.04 and 12.06.  Plaintiff also cites to Ms. Balka's treatment notes.  Plaintiff argues that the ALJ committed legal error in not addressing whether Plaintiff's impairments met the criteria of Listing 12.06, and in not addressing the opinion of Dr. Aikens - Plaintiff's long time treating physician and the only treating psychologist in the entire record before the ALJ.  Plaintiff argues these errors resulted in findings regarding whether Plaintiff's impairments met or equaled a listed impairment, regarding Plaintiff's RFC,

16

and whether Plaintiff could perform his past work, that were not supported by substantial evidence.

Other arguments the Commissioner makes that the court rejects is that "there is an absence of objective medical evidence in the record to support Plaintiff's claims of disability" (Doc. 15, at 7) and that "Plaintiff has failed to . . . poin[t] to [any] specific medical evidence of record to support his claims" (Doc. 15, at 14). Contrary to the Commissioner's arguments, as has already been set forth, Plaintiff relies upon the Aiken and Balka report and progress notes, which include diagnoses and notations regarding medication being used to treat Plaintiff's PTSD and depression, as well as low Global Assessment of Functioning ratings. Plaintiff also relies upon documents from Dr. Aiken that were submitted to the Appeals Council. (Tr. 599 (Aikens' letter describing Plaintiff's symptoms), 600-01 (Aikens' completed MRFC form), 602-07 (Aikens' completed Psychiatric Review Technique form).

Another example of a meritless argument made by the Commissioner is: "[T]he ALJ thoroughly discussed the medical and nonmedical evidence of record, and in doing so provided analysis of the severity of Plaintiff's impairments and resultant functional limitations." (Doc. 15, at 8.) Contrary to the Commissioner's argument, as set forth above, the court has concluded that the ALJ did not discuss the relevant evidence and neither explained why Plaintiff did not meet or equal a listed

17

impairment, as specified in *Clifton v. Chater*, nor explained the connection between his MRFC and the relevant medical evidence in the record.

In conclusion, this case must be remanded because the ALJ's listing discussion (in conjunction with his RFC discussion) was inadequate to support the ALJ's listing finding. The analysis did not provide enough for this court to be able to determine how the ALJ treated the relevant medical evidence of record, including how the ALJ reached his RFC finding, making it "beyond meaningful judicial review." *Clifton*, 79 F.3d at 1009.

### B. Weight given to Plaintiff's Treating Sources

Second, Plaintiff argues that the Commissioner failed to give proper weight to the medical opinion of Plaintiff's treating sources. Because the court is ordering that this case be reversed and remanded, the court does not address Plaintiff's main argument regarding the weight given to Dr. Aikens' opinion. Upon remand, the ALJ can reevaluate his findings in light of the new Aikens letter and reports given to the Appeals Council.

Instead, the court simply notes that an ALJ is required to explain the weight he gives to Plaintiff's treating sources, as well as provide sufficient reasons for giving that weight. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); *see also* 20 C.F.R. § 404.1527; SSR 96-2p. The Tenth Circuit has ruled that simply including boilerplate language in the ALJ's decision, such as that the ALJ "has considered opinion evidence

in accordance with the regulations," does not satisfy the ALJ's responsibility to give reasons for the weight he assigns to the claimant's treating sources. *See Harper v. Astrue*, Slip Op. 10-5136, 2011 WL 2580336, n.1 (10th Cir. June 30, 2011) (unpublished). As discussed above, the ALJ in this case only included such boilerplate language in his decision. On remand, the ALJ must set forth in sufficiently specific language the reasons for the weight he gives to the medical evidence in the record, including Plaintiff's treating sources' opinions.

### C. RFC Assessment

Third, Plaintiff also challenges the ALJ's RFC assessment, arguing that the assessment failed to accurately reflect his mental limitations. The court concludes that the ALJ's MRFC assessment is not supported by substantial evidence because the ALJ did not explain how he arrived at his MRFC assessment from the medical evidence in the record.

The court agrees with the Commissioner that determinations of RFC are for the ALJ to make. *See Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). The court also agrees that RFC assessments "must be based on all relevant evidence in the record," not just the medical evidence. *See* 20 C.F.R. § 404.1545; *see also* SSR 96-5p. However, the ALJ also must consider the relevant medical evidence in the record and explain how he treats that evidence in arriving at his RFC finding. As explained above, the ALJ failed to do that in this case.

### D. Medical/Vocational Guideline, Rule 202.06

Finally, Plaintiff also argues that Medical/Vocational Guideline, Rule 202.06 directs a finding that Plaintiff is disabled, requiring outright reversal and an award of benefits in this case. The court disagrees.

The Tenth Circuit has held that outright reversal and remand for immediate award of benefits is appropriate when additional fact finding would serve no useful purpose, but would merely delay the receipt of the plaintiff's benefits. *See Harris v. Sec'y of Health & Human Servs.*, 821 F.2d 541, 545 (10th Cir. 1987). The court concludes that such a situation does not exist in this case, and therefore instead reverses and remands this case for the reasons stated above.

### ORDER

Based on the above analysis, **IT IS HEREBY ORDERED** that the Commissioner's decision is **REVERSED** and **REMANDED**.

DATED this 29th day of July, 2011.

BY THE COURT:

*[signature]*

Samuel Alba
United States Magistrate Judge